**NOT FOR PUBLICATION**
**POSTED ON WEBSITE**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

In re                                    ) Case No. 22-12056-B-13
                                         )
**SHANNON HAGER,**                       ) DCN PK-2
                                         )
                    Debtor.              )
                                         )
                                         )
_____  )

**MEMORANDUM RULING ON MOTION TO ANNUL STAY**

_____

Patrick Kavanagh, LAW OFFICES OF PATRICK KAVANAGH, Bakersfield, CA, for Ian McGilvray, Movant.

Andrew J. Christensen, LAW OFFICES OF ANDREW J. CHRISTENSEN, P.C., Oakland, CA, & Robert S. Williams, WILLIAMS & WILLIAMS, INC., Bakersfield CA, for Shannon Hager, Debtor.

_____

RENÉ LASTRETO II, Bankruptcy Judge:

California's nonjudicial foreclosure system is designed to provide the lender-beneficiary with an inexpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. *Moeller v. Lien*, 25 Cal. App. 4th 822, 830, 30 Cal. Rptr. 2d 777 (1994).

My, how things change.

Ian McGilvray ("McGilvray") moved to annul the automatic stay under 11 U.S.C. § 362(d)(1) to validate his purchase of

real property located at 2313 Sycamore Lane, Pine Mountain Club, CA 93222 ("Property") at a foreclosure sale, and to allow him to proceed with his unlawful detainer action in Kern County Superior Court, entitled *Giuliana Vista GP v. Shannon Hager, et al.*, case no. BCL-23-010025 ("Unlawful Detainer Action").[1] Dckt. 44. McGilvray also requested waiver of the 14-day stay of Fed. R. Bankr. P. ("Rule") 4001(a)(3). *Id.*

Shannon Hager ("Debtor") timely opposed and McGilvray replied. Dckt. 58-59, 61-64.

At the hearing on May 17, 2023, the parties presented oral argument and the court took the matter under submission. Dckt. 65. Under 11 U.S.C. § 362(e) and for good cause, the court ordered continuation of the automatic stay through July 14, 2023, unless terminated by further order of the court. *Id.*

Applying the amended California foreclosure statutes and weighing the factors at play when considering a request to annul the stay, the court finds annulment inappropriate and DENIES the motion.


I. FACTS

In early November 2022, Property was Debtor Shannon Hager's residence. She lived there for 24 years. Dckt. 62. Her sister and her 75-year-old mother with declining health also reside there. *Id.* Property, which is in one of the mountain communities in Tejon Pass in southwestern Kern County, was encumbered by a Deed of Trust in favor of Flagstar Bank ("Flagstar"). Due to the

---

[1] McGilvray is one of the partners in Giuliana Vista ("Giuliana Vista"). Dckt. 32.

COVID-19 outbreak, Ms. Hager's employment and that of her sister and daughter, were interrupted. *Id.* Earlier, she had difficulty making payments to Flagstar. *Id.* So, Flagstar agreed to forbear collection of some payments. But due to Ms. Hager's employment situation, she could not qualify for a loan modification. *Id.* Flagstar rejected Ms. Hager's tender of $10,000 six months earlier and was foreclosing.

McGilvray has been in the real estate business for years and has purchased properties at foreclosure sales before. Dckt. 48. He is also familiar with the "multiple steps" foreclosing parties have to take to foreclose on certain properties including allowing for sales to "non-profits." *Id.*

McGilvray purchased Property at the nonjudicial foreclosure sale for $164,512.71 on November 7, 2022. Dckt 48. Multiple parties submitted notices of intent to bid on the Property from November 10 to 21, 2022, but it is undisputed that no bids were received. *Ex. A*, Dckt. 63. The foreclosure trustee, Prober & Rafael ("Prober"), executed the *Trustee's Deed Upon Sale* ("Trustee's Deed") on November 23, 2022 and sent it to McGilvray. *Ex. A*, Dckt. 49.

On December 1, 2022, 21 days after the foreclosure sale, Debtor filed chapter 13 bankruptcy. Dckt. 1. She says she did not know of the foreclosure sale until someone claiming to be the owner of Property called her the day after Thanksgiving, 2022. Dckt. 62. The day after Debtor filed her bankruptcy case, McGilvray submitted the Trustee's Deed to the Kern County recorder's office who recorded it that day. *Ex. A*, Dckt. 49. McGilvray claims he had no knowledge of the bankruptcy at that

time. Dckt. 48. McGilvray initiated the Unlawful Detainer Action about one month later. *Ex. B*, Dckt. 29. According to McGilvray's attorney, the Unlawful Detainer Action has been dismissed.

Debtor valued Property in her schedules at $426,600 and listed Flagstar as the mortgagee with a secured claim of $177,863.79. Dckt. 18. Flagstar's treatment under the proposed plan is to be paid as though the foreclosure sale did not occur. Dckt. 17. Notably, neither McGilvray nor Giuliana Vista were listed as creditors in the schedules or the master address list. Dckt. 1, 3, 18.

On March 1, 2023, McGilvray filed a motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(2). Dckt. 27; PK-1. The court granted the motion without retroactive relief because it was not requested. Dckt. 37. The court directed McGilvray to prepare the order, which was to be approved by Debtor's counsel, but an order is not yet submitted.

McGilvray now seeks to annul the stay on two grounds. Dckt. 44. First, he contends California law allows the post-petition recording of the Trustee's Deed to relate back to the date of the sale. Since notices of intent to bid were submitted, McGilvray contends the Trustee's Deed will be deemed perfected as of the date of the sale under Cal. Civ. Code § 2924h(c) if it is recorded within 60 days of the sale, as it was here. Dckt. 46. Second, McGilvray contends the *Fjeldsted* balancing test supports annulling the automatic stay. *Id.*; *see Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 32 (B.A.P. 9th Cir. 2003).

Debtor opposes, first, because the foreclosure sale was void as a matter of law for violating the automatic stay. Under

California law, Debtor argues the trustee's sale was not final
before the bankruptcy was filed. Dckt. 61. Second, Debtor
contends the *Fjeldsted* factors do not support annulling the
stay. *Id.* Neither party requested discovery. Both parties
consented on the record to the court taking this matter under
submission and ruling based on the existing record.

## II. <u>JURISDICTION</u>

The United States District Court for the Eastern District
of California has jurisdiction of this civil proceeding by
virtue of 28 U.S.C. § 1334(b) because it arises under title 11
and in a case under title 11 of the United States Code. The
District Court has referred this matter to this court under 28
U.S.C. § 157(a). This is a "core" proceeding under 28 U.S.C.
§ 157(b)(2)(G).

## III. <u>ISSUES</u>

1.    Whether the post-petition finalizing of a pre-petition
foreclosure sale subject to overbid under Cal. Civ. Code ("CC")
§ 2924m(c) violated the automatic stay of 11 U.S.C. § 362(a).

2.    If the automatic stay does apply, whether to annul the
automatic stay under applicable law.

## IV. <u>DISCUSSION</u>

A. <u>Important General Concepts</u>

A bankruptcy petition operates as a stay applicable to all
parties and preventing, among other things, any act to obtain
possession of property of the estate. 11 U.S.C. § 362(a)(3). The

stay does not apply to any act to perfect an interest in property to the extent that the trustee's rights are subject to perfection under 11 U.S.C. § 546(b). That section permits an entity who acquires rights to property pre-petition to perfect its interest in property post-petition. *In re Stork*, 212 B.R. 970, 971 (Bankr. N.D. Cal. 1997).

The Debtor bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997).

State law determines the property rights of the parties, and whether those rights are obtained pre- or post-petition. *Butner v. United States*, 440 U.S. 48 (1979). We must "look to state law to determine property interests of the debtor." *Eden Place LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1127 (9th Cir. 2016). That said, filing bankruptcy cannot give a debtor a greater interest in an asset than that which she owned pre-bankruptcy. *Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815, 819 (9th Cir. 1997).

In interpreting California law, CC § 4 requires the Civil Code "to be liberally construed with view to effect its objects and to promote justice." *Blevins v. Palmer*, 172 Cal. App. 2d 324, 327, 242 P.2d 356, 358 (1959) ("[P]rovisions of the Civil Code dealing with transfers of real property are, as required by section 4, to be 'liberally construed with a view to effect its objects.'") (citations omitted). In the case of substantially similar existing statutes, the Civil Code shall be construed as a continuation, rather than as a new enactment. CC § 5.

Words and phrases are construed according to their context and the approved usage, but technical words and phrases are to be construed according to peculiar and appropriate meaning or definition. CC § 13. *Los Angeles Cnty. v. Frisbie*, 19 Cal. 2d 634, 639, 122 P.2d 526, 529 (1942) ("While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language."), citing *In re Haines*, 195 Cal. 605, 612, 234 P. 883, 885-86 (1925).

B. <u>Prior California law</u>

California substantially modified its foreclosure scheme in 2020, effective January 1, 2021 through January 1, 2026.[2] Since then, it has been further amended and the sunset has been extended to January 1, 2031.[3]

Under former California law in effect through the end of 2020, the analysis here would have been relatively straightforward. A foreclosure sale occurred before the bankruptcy was filed. The sale was deemed final on the date of the foreclosure sale. CC § 2924h(c) (2020).[4] A timely recorded trustee's deed post-petition would have related back to the date of the sale. *Id.* Debtor would have possessed only bare legal

---

[2] Senate Bill ("SB") 1079, Cal. 2019-20 Reg. Sess. (eff. Jan. 1, 2021)
[3] Assembly Bill ("AB") 175, Cal. 2021-22 Reg. Sess. (eff. Jan. 1, 2022); AB 1837, Cal. 2022-23 Reg. Sess. (eff. Jan. 1, 2023). At the time this case was filed and the salient facts here occurred, the relevant California Civil Code in effect from Jan. 1, 2022 through Dec. 31, 2022 was applicable (AB 175). Unless otherwise indicated, references to the Civil Code are to this 2022 version.
[4] SB 1277, Cal. 2003-04 Reg. Sess. (eff. Jan. 1 2005—Dec. 31, 2020).

title to the Property on the petition date and Debtor's
equitable title would have been extinguished whether or not a
trustee's deed had been recorded before the bankruptcy. Stay
relief would not have been required to record the trustee's deed
under § 362(b)(3) as a post-petition perfection of the pre-
petition interest in Property. The sale would not be avoidable
because the trustee's rights to avoid the transfer under 11
U.S.C. §§ 544(a) or 549 are subordinate to perfection of pre-
petition interests under 11 U.S.C. § 546(b).[5]

Prior to January 1, 2021, CC § 2924h(c) controlled finality
of the sale and perfection. That provision provided that a
trustee's sale "shall be deemed final upon the acceptance of the
last and highest bid and shall be deemed perfected as of 8 a.m.
on the actual date of sale if the trustee's deed is recorded
within 15 calendar days after the sale . . ." CC § 2924h(c)
(2020).

Bankruptcy courts quickly established the "ground rules"
for invoking the previous version of CC § 2924h(c). A
foreclosure sale commenced after a bankruptcy filing was void
notwithstanding former CC § 2924h(c). *Blatnick v. Sanders (In re
Sanders)*, 198 B.R. 326, 327-28 (Bankr. S.D. Cal. 1996) ("[CC]
§ 2924h(c) properly may only be invoked, if at all, where there
is a valid foreclosure sale which occurs pre-petition.").[6] If
"the gavel falls" at the foreclosure sale against the debtors
pre-petition, the sale is finalized and the debtors possess only

---

[5] This is a chapter 13 case. The debtor's lingering "rights" post-
petition would be defined by §§ 1302, 1303, and 1306(b).
[6] The *Sanders* court annulled the automatic stay because of the debtor's
bad faith. *Sanders*, 198 B.R. at 329-30.

bare legal title, which "is of no value to the estate." *Davisson v. Engles (In re Engles)*, 193 B.R. 23, 25, 27-28 (Bankr. S.D. Cal. 1996) (citations omitted). If the trustee's deed resulting from a pre-petition foreclosure sale was recorded within the then-applicable 15-days after the sale, the recordation of the trustee's deed did not violate the automatic stay under 11 U.S.C. § 362 (b)(3). *In re Garner*, 208 B.R. 698, 701 (Bankr. N.D. Cal. 1997);[7] *Bebensee-Wong v. Fannie Mae*, 248 B.R. 820, 823 (B.A.P. 9th Cir. 2000) (holding the automatic stay is not violated with a timely post-petition recording of a trustee's deed upon a pre-petition sale); *cf. In re Stork*, 212 B.R. at 972 (although the post-petition recording of pre-petition trustee's deed outside of then-15-day relation-back window violated the stay, annulment was appropriate because purchaser qualified for protection under 11 U.S.C. § 549(c)).

This approach has been applied on numerous occasions. *Turturici v. Nat'l Mortg. Servicing, LP*, No. CIV-S-10-2853 KJM, 2011 U.S. Dist. LEXIS 109242, 2011 WL 4480169 (E.D. Cal. Sep. 24, 2011); *Edwards v. Wells Fargo Bank, N.A. (In re Edwards)*, 454 B.R. 100 (B.A.P. 9th Cir. 2011); *In re Lucore*, No. SC-12-1604-JuBaPa, 2013 Bankr. LEXIS 2498, 2013 WL 2367800 (B.A.P. 9th Cir. May 30, 2013); *In re Shirazi*, 2013 U.S. Dist. LEXIS 85654, 2013 WL 3070996 (Bankr. C.D. Cal. June 18, 2013); *In re Richter*, 525 B.R. 735 (Bankr. C.D. Cal. 2015); *In re Scavina*, 618 B.R. 852 (Bankr. C.D. Cal. 2020).

This relative stasis was significantly upset in 2020.

---

[7] The *Garner* court noted if the recording of the trustee's deed occurred more than 15 days after the foreclosure sale, the automatic stay would be violated. *Garner*, 208 B.R. at 701.

C. <u>Current California law</u>

When California amended its foreclosure scheme in 2020, effective January 1, 2021, certain contingent overbid rights were given to any "prospective owner-occupant," "eligible tenant buyer," and "eligible bidder."[8] The statutory scheme for determining sale finality and overbid procedure, if applicable, was expanded by enacting CC § 2924m(c). CC § 2924h(c) was also amended to extend the relation-back period, first to 18 days, and then to 21 days beginning in 2022.[9] This relation-back period can be further extended under certain circumstances.

Under CC § 2924m(c), if a foreclosure sale of a real property containing 1-4 residential units is completed and the prevailing bidder is a prospective owner-occupant as defined in CC § 2924m(a)(1), then the sale is final, and that person will immediately take title to the property. CC § 2924m(c)(1). If the prospective owner-occupant records their trustee's deed within 21 days of the sale, then the sale will be deemed final on the foreclosure sale date, and the trustee's deed perfected as of 8 a.m. on the actual date of the sale. CC § 2924h(c).

If the prevailing bidder is not a prospective owner-occupant, then a 15-day window opens after the sale. While the window is open, eligible third parties may submit bids or notices of intent to bid, and the sale will not be deemed final until the earliest of one of the conditions specified in CC § 2924m(c)(1) through (c)(4) are satisfied.

///

---

[8] SB 1079 (2020).
[9] AB 175 (2021).

Within 48 hours of the sale, the foreclosing trustee is required to post facts on the internet website set forth in the notice of sale: (1) the date on which the foreclosure sale took place; (2) the amount of the last and highest bid at the sale; and (3) an address at which the trustee can receive documents sent via U.S. mail and overnight delivery. CC § 2924m(e)(1). The purpose of this posting is to inform prospective eligible bidders of the sale and to provide them with an opportunity to bid or submit a notice of intent to bid.[10]

If no bids or notices of intent to bid are received by the foreclosing trustee by the 15th day, then the window closes. The sale is final on the 15th day after the foreclosure sale. CC § 2924m(c)(2). If the trustee's deed is recorded by the 21st day after the sale, then the sale will be deemed final and perfected as of 8:00 a.m. on the date of the sale. CC § 2924h(c).

If, however, a representative of all eligible tenant buyers submits a bid that (i) matches the foreclosure sale price, (ii) is sent to the trustee by certified mail, overnight delivery, or another method allowing confirmation of the delivery date, and (iii) such bid is received by the trustee before 5:00 p.m. on the 15th day after the foreclosure sale (while the window is open), then the sale is immediately deemed final and the eligible tenant buyers will take title to the property. CC

---

[10] An "eligible bidder" is broadly defined to include eligible tenant buyers, prospective owner-occupants, and certain types of nonprofit associations, nonprofit corporations, cooperative corporations, limited partnerships, limited liability companies, community land trusts, and limited-equity housing cooperatives, as well as the state, the Regents of the University of California, a county, city, district, public authority, or public agency, and any other political subdivision or public corporation in the state. CC § 2924m(a)(3).

§ 2924m(c)(3). This provision essentially operates as a right of first refusal for tenants. Under this scenario, if the eligible tenant buyers' trustee's deed is recorded within 60 days, then both the sale and recordation will be deemed final and deemed perfected as of 8:00 a.m. on the date of the foreclosure sale. CC § 2924h(c).

Alternatively, during the same 15-day window, any current tenant in the property and all other eligible bidders can submit a higher offer than the foreclosure sale price or a non-binding notice of intent to bid. CC § 2924m(c)(2). Should either of these occur, an additional window of time opens lasting until the 45th day after the foreclosure sale. *Id.*

While this 45-day window is open, a representative of all current tenants can match the sale price to have it immediately deemed final. CC § 2924m(c)(3)(A). The tenant will immediately take title to the property. If the deed is recorded within 60 days of the foreclosure sale, then the sale will be deemed final and deemed perfected as of 8:00 a.m. on the date of the foreclosure sale. CC §§ 2924m(c)(3)(B), 2924h(c).

On the other hand, if an eligible bidder who timely provided a notice of intent to bid to the trustee in the first 15-day window submits a bid that exceeds the foreclosure sale price within the 45-day window, the sale is deemed final at the conclusion of the 45-day window. CC § 2924m(c)(4)(B). The eligible bidder with the highest offer will take title to the property. Relation back under CC § 2924h(c) is not in the statute and is not applicable. More on this later.

///

Lastly, if, by the 45th day at 5:00 p.m., no eligible bidders or eligible tenant buyers have submitted bids pursuant to their timely notices of intent to bid, then the sale will be final at the end of the 45th day, and the last, highest bidder at the initial foreclosure sale auction will take title to the property. CC § 2924m(c)(4)(A).

D. The Sale Finalized Post-Petition and Violated the Stay

The last scenario describes this dispute. The foreclosure sale occurred on November 7, 2022. *Ex. A*, Dckt. 49. Since McGilvray is an investor and not a prospective owner-occupant, a 15-day period to overbid opened from the date of the sale.

Several eligible bidders submitted notices of intent to bid during the 15-day window. *Ex. A*, Dckt. 63. These notices of intent to bid opened a 45-day window running from the date of the sale in which these eligible bidders could submit a bid exceeding the foreclosure sale price and comply with other requirements. No bids were received.[11] Thus, the sale became final on the 45th day at 5 p.m.: December 22, 2022. By then, Debtor had already filed bankruptcy. The automatic stay was in effect. Finalizing the sale on or after that date violates the stay. Any violation of the stay is void and without effect. *Sanders*, 198 B.R. at 328 (citing *In re Stringer*, 847 F.2d 549 (9th Cir. 1988); *In re Schwartz*, 954 F.2d 569 (9th Cir. 1992); ///

---

[11] Debtor's counsel argues that bids may have been received if McGilvray had not prematurely recorded the Trustee's Deed 25 days after the sale, and instead allowed the full 45-day period to run its course. That is speculative on this record.

13

1  *In re Krueger*, 88 B.R. 238, 241 (B.A.P. 9th Cir. 1988)).
2  Therefore, the sale is void for violating the automatic stay.

3      McGilvray recorded the Trustee's Deed on December 2, 2022,
4  which is 20 days before the expiration of the 45-day window.[12] At
5  that time, such perfection could not be accomplished because the
6  sale had not yet been "deemed final." CC § 2924m(c), (c)(4).

7      Notwithstanding CC § 2924m(c)(4), McGilvray argues he
8  qualifies under CC § 2924h(c) to have the sale deemed final upon
9  the foreclosing trustee's acceptance of McGilvray's last and
10  highest bid, and to have his interest deemed perfected as of 8
11  a.m. on the actual date of the sale because the Trustee's Deed
12  was recorded within 60 days. Dckt. 46.

13      In response, Debtor emphasizes the distinction between a
14  sale being "deemed final" and "deemed perfected." Dckt. 61.
15  Debtor contends that CC § 2924m(c) prevails over § 2924h(c) as
16  to when the sale is deemed final. Debtor also asserts that the
17  60-day relation-back period for perfection applies only if there
18  is a notice of intent to bid submitted by an eligible tenant
19  buyer. Since the 60-day relation-back period did not apply,
20  Debtor maintains that McGilvray only had a 21-day period under
21  CC § 2924h(c) to have the perfection relate back to the date of
22  the sale.

23      McGilvray replies that Debtor's interpretation is a radical
24  departure from the pre-existing law and a departure from the
25  cases that have interpreted the law. Dckt. 59. Although the
26  court agrees that CC § 2924m is a radical departure from the

27  _____

28  [12] It is also 25 days after the foreclosure sale, which is outside the
21-day "relation back" period under CC § 2924h(c).

prior precedent, the legislature has changed when a foreclosure sale is deemed final for affected properties.

The distinction between finality and perfection is important. "Deemed final" means the point in time in which the foreclosure sale is considered completed and equitable title transfers from the mortgagor/homeowner to the buyer, and when a sale is "deemed final" is controlled by CC §§ 2924m(c) and 2924h(c). Prior to the enactment of § 2924m(c), foreclosure sales were "deemed final" at the time of the sale under CC § 2924h(c). *Engles*, 193 B.R. at 29; *Sanders*, 198 B.R. at 327; *Garner*, 208 B.R. at 700; *Bebensee-Wong*, 248 B.R. at 822. But that is no longer the rule. Now, CC § 2924m(c) controls finality except in certain circumstances where CC § 2924h(c) is applicable. *See*, *e.g.*, *Students v. Clear Recon Corp.*, No. 56202200566272CUORVT, 2022 WL 17541903 (Cal.Super. Nov. 4, 2022) ("[T]he general rule about when a trustee's sale is deemed final is not applicable in the present case, which instead is governed by Civ. Code § 2924m due to Plaintiffs attempt to make an overbid pursuant to § 2924m.")

Meanwhile, the point in time in which a sale is "deemed perfected" is controlled by CC § 2924h(c). The difference is that the 60-day relation-back period for having a sale both "deemed final" and "deemed perfected" is only applicable if notices of intent to bid are received from eligible tenant buyers for properties with 1-4 residential units. In all other cases, the finality and perfection of a sale will occur under § 2924h(c) if the deed is recorded within 21 days. Since CC § 2924h(c) specifically references CC § 2924m(c)(3), and not

(c), (c)(2), or (c)(4), Debtor contends, and the court agrees, that when a sale is subject to the 45-day overbid window, CC § 2924h(c) only applies to eligible tenant buyers, rather than eligible bidders and prospective owner occupants. It is undisputed that McGilvray is not a tenant buyer.

CC § 2924h(c) states, in relevant part:

> For the purposes of this subdivision, the trustee's sale shall be deemed final upon the acceptance of the last and highest bid and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 21 calendar days after the sale, or the next business day following the 21st day if the county recorder in which the property is located is closed on the 21st day. If an eligible bidder submits a written notice of intent to bid **pursuant to paragraph (3) of subdivision (c) of Section 2924m,** the trustee's sale shall be **deemed perfected** as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day following the 60th day if the county recorder in which the property is located is closed on the 60th day . . .

CC § 2924h(c) (emphasis added).

First, the relation-back period expired after the after 21st day. The 60-day window is only applicable for bids or notices of intent to bid that were submitted pursuant to CC § 2924h(c)(3), which is specific to eligible tenant buyers only. CC § 2924h(c) appears to be ambiguous at first glance because it refers to an "eligible bidder" while citing to CC § 2924m(c)(3), rather than (c), (c)(2) or (c)(4).

If a general statute states that its provisions govern except as otherwise expressly provided by statute, a specific statute governing the same matter in a particular context will be treated as an express exception to the general statute.

16

*Williams v. Chino Valley Indep. Fire Dist.*, 61 Cal. 4th 97, 104-109, 347 P.3d 976 (2015). When a statute with reference to one subject contains a given term or provision, the omission of that term or provision from another part of the same statute, or from a similar statute concerning the related subject, is significant to show that a different legislative intent existed. *Dep't Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015); *Kabran v. Sharp Mem'l Hosp.*, 2 Cal. 5th 330, 344, 386 P.3d 1159 (2017). If the legislature intended to allow all eligible bidders to take advantage of the 60-day relation-back period, then it could have referenced the bidding procedure in (c), (c)(2), or (c)(4), rather than specifically to (c)(3).

The Assembly Judiciary Committee Report[13] on SB 1079 indicates that the legislative purpose of SB 1079 was to "curb further purchases of single-family homes at foreclosure auctions by companies that then operate them as rental properties." SB 1079 (Skinner), Cal. Assemb. Judiciary Comm. Report (Aug. 12, 2020).[14] This report's description of the bidding procedure under CC § 2924m(c)(3) and (c)(4) when notices of intent to bid or bids are submitted and a 45-day window opens makes clear that the relation-back provision was intended to only apply to eligible tenant buyers:

///

---

[13] The court may consider statements in legislative committee reports concerning the statutory objects and purposes that are in accord with a reasonable interpretation of the statute as an aid in determining legislative intent. *S. Cal. Gas Co. v. Pub. Utils. Com.*, 24 Cal. 3d 653, 659, 156 Cal. Rptr. 733, 767, 596 P.2d 1149, 1152 (1979).

[14] The legislative committee documents for SB 1079 are available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200SB1079 (visited May 23, 2023).

g) During the 45-day window, **a representative of all of the current tenant[s] in the house again has a right of first refusal to match the foreclosure sale price. If, at any time during the 45 days, this representative matches the foreclosure sale price, the sale is immediately deemed final and the tenant will take title to the property.**

h) During the same 45-day window, any current tenant in the property and all other eligible bidders can submit higher offers than the foreclosure sale price.

i) If, during the 45 days, one or more of the eligible bidders submits a bid that exceeds the foreclosure sale price, the sale is deemed final at the conclusion of the 45 days, and the eligible bidder that made the highest offer will take title to the property.

j) **Otherwise, the sale is deemed final at the conclusion of the 45 days, and the party that made the last and highest offer at the initial foreclosure auction will take title to the property.**

*Id.* at 3-4 (emphasis added).

Second, CC § 2924m(f).[15] states that "[t]his section shall prevail over any conflicting provision of Section 2924h." Contemporaneously, CC § 2924h(f).[16] provides, "[e]xcept as specifically provided in Section 2924m, in the event that this section conflicts with any other statute, then this section shall prevail." In the absence of these sections, CC § 2924h(c) could reasonably be construed as applying the 60-day relation-back period to all eligible bidders. But in the context of CC § 2924m(c), which is controlling, eligible bidders include eligible tenant buyers and others, and the sale "shall not be

---

[15] This provision has been re-lettered to CC § 2924m(h) as of Jan. 1, 2023. AB 1837 (2022).

[16] Beginning Jan. 1, 2023, CC § 2924h(f) (eff. 2023) now provides, "[i]n the event that this section conflicts with any other statute, then this section shall prevail." *Id.* Current CC § 2924m(h) (eff. 2023) still prevails.

deemed final until the earliest of the following: . . . [(c)(1)-(c)(4)]" CC §§ 2924h(c) and 2924m(c), therefore, appear to contain conflicting periods as to when the sale shall be deemed final for non-eligible tenant buyers attempting to use CC § 2924h(c) to invoke the relation-back procedure. CC §§ 2924m(f) and 2924h(f) resolve this conflict in favor of CC § 2924m. Therefore, the 60-day relation-back period is reserved for eligible tenant buyers under CC § 2924m(c)(3).

McGilvray argues that the focus on December 22, 2022—the 45th day after the foreclosure sale—is misplaced because McGilvray had equitable title subject to divestment by all three classes of persons who qualified under § 2924m(c) at the time the last bid was taken. Dckt. 59.

This overstates his interest. Under CC § 2924h(c) (even before the amendments), the foreclosure sale is not deemed perfected on the original sale date until the deed is recorded. Before the deed is recorded, the sale is neither "perfected" nor "deemed perfected" – it is just a sale. *Dr. Leevil, LLC v. Westlake Health Care Ctr.,* 6 Cal. 5th 474, 482, 431 P.3d 151, 155 (2018). Under the new statutes, McGilvray's purchase of Property at the foreclosure sale was not final until the 45th day after the sale.

In *Ford*, a bankruptcy court in the Central District of California dealt with the new version of CC §§ 2924h and 2924m in a similar situation involving a pre-petition foreclosure sale with a post-petition recording. *In re Ford*, No. 2:22-bk-13649-WB, 2022 Bankr. LEXIS 3545, 2022 WL 17742285 (Bankr. C.D. Cal. Dec. 15, 2022). There, two eligible bidders submitted notices of

intent to bid within 15 days of the foreclosure sale. *Id.* at *7. As a result, the court found that CC § 2924h(c) extended the time for relation back of the recordation to 60 days, and the sale was deemed final and perfected as of 8:00 a.m. on the date of the sale. *Id.* Notably, neither of these eligible bidders were "eligible tenant buyers," so the court, in effect, applied § 2924h(c) to all eligible bidders. *Id.* at *6; *see also*, *Exs.* 1-2, Dckt. 20-2, 20-3, Case No. 2:22-bk-13649-WB (Bankr. C.D. Cal.).

But *Ford* differs from the facts here for at least two reasons. There, the debtor did not raise the issue of when the sale became final under the new amendments to the foreclosure procedure. Also, the trustee's deed was recorded forty-nine (49) days after the foreclosure sale. *Id.* at *1. So, there was no question concerning finality of the sale.

When the sale here became final on December 22, 2022, the automatic stay was in full force and effect. § 362(a)(3). Although the facts of this case mirror those in *Garner*, *Bebensee-Wong*, and related progeny, the legislature changed the date that the sale is deemed final by enacting CC § 2924m(c). Thus, instead, this case mirrors *Sanders* in that the sale became final post-petition:

> On the facts of this case, the Court holds that the foreclosure sale conducted postpetition is void, and recordation of the trustee's deed . . . cannot resuscitate the void sale by reliance on a state statute that would relate back the act to a time when it would not have been prohibited.

*Sanders*, 198 B.R. at 329.

///

1    Therefore, the sale became final under CC § 2924m(c)(4)

2    post-petition and is void. CC § 2924h(c) cannot be used to

3    finalize an incomplete sale to a time before the petition was

4    filed. McGilvray does not qualify for the relation back effects

5    of CC § 2924h(c) as the statute was written in 2022.[17]

6

7    D. The *Fjeldsted* Factors Do Not Support Annulling the Stay

8        The court now turns to McGilvray's request to annul the

9    automatic stay.

10       11 U.S.C. § 362(d)(1) allows the court to grant relief from

11   the stay for cause, including the lack of adequate protection.

12   "Because there is no clear definition of what constitutes

13   'cause,' discretionary relief from the stay must be determined

14   on a case-by-case basis." *In re Mac Donald*, 755 F.2d 715, 717

15   (9th Cir. 1985).

16       11 U.S.C. § 362(d)(2) allows the court to grant relief from

17   the stay if the debtor does not have an equity in such property

18   and such property is not necessary to an effective

19   reorganization.

20       The Ninth Circuit Court of Appeals has warned that

21   retroactive relief should only be "applied in extreme

22   circumstances." *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d

23   107, 109 (9th Cir. 1995), quoting *In re Shamblin*, 890 F.2d 123,

24   126 (9th Cir. 1989); *see also In re Aheong*, 276 B.R. 233, 250

25   ────────────────

       [17] Debtor's counsel has argued that two provisions of CC § 2924m
26   establish Debtor's title to Property during these "open window" periods. That
     is incorrect. Both provisions, subdivisions (f) dealing with a trustor's
27   title until the sale is deemed final, and (*l*) dealing with continued hazard
     insurance coverage until the sale is final became effective in 2023 and were
28   not part of § 2924m in 2022 when the salient facts here occurred. *See* CC
     § 2924m(o) (2023).

(B.A.P. 9th Cir. 2002). When deciding a motion to annul the automatic stay, the court may consider the "*Fjeldsted*" factors:

> 1. Number of filings;
> 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
> 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
> 4. The Debtor's overall good faith (totality of circumstances test;
> 5. Whether creditors knew of the stay but nonetheless took action, thus compounding the problem;
> 6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
> 7. The relative ease of restoring parties to the status quo ante;
> 8. The costs of annulment to debtors and creditors;
> 9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative contract;
> 10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
> 11. Whether annulment of the stay will cause irreparable injury to the debtor;
> 12. Whether stay relief will promote judicial economy or other efficiencies.

*Fjeldsted*, 293 B.R. at 24-25. One factor alone may be dispositive. *Id.* The two main factors focused on by courts are "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Merriman*, 616 B.R. 381, 387 (B.A.P. 9th Cir. 2020), quoting *Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055.

Weighing the *Fjeldsted* factors follows:

1. <u>Number of filings</u>: This appears to be Debtor's first bankruptcy filing in this district. This factor is inapplicable.

    2. <u>Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors</u>: This factor is inapplicable since this is Debtor's first bankruptcy filing.

    3. <u>Extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser</u>: McGilvray claims to be a bona fide, pre-petition purchaser of Property. At the time the Trustee's Deed was recorded, McGilvray claims he did not have actual or constructive notice of the bankruptcy. Dckt. 46, 47. McGilvray contends he will be prejudiced if the stay is not annulled.

    Meanwhile, Debtor contends that McGilvray will not be prejudiced if the stay is not annulled because he can get his money back from the sale and not enough time has passed for there to be any serious prejudice. Dckt. 58, 61. Additionally, the automatic stay was violated, so Debtor argues the sale is void as a matter of law. Since annulment is an extraordinary remedy in repeat-filing cases with legitimate harm to innocent third parties, this factor should support denying this motion. Further, Debtor claims that if the stay is annulled, she will suffer catastrophic financial ruin and lose over $250,000 in equity.

    There are no facts suggesting McGilvray has transferred Property, or that any third party is affected if the stay is not annulled.

    The focus of this factor is on harm or prejudice to third parties and creditors, including bona fide purchasers. It is unclear whether McGilvray can recover the money already paid.

From McGilvray's previous motion, it appeared that the mortgagee
has already been paid from the foreclosure sale proceeds. It
seems a claim for unjust enrichment in the proper forum may be
an option. McGilvray may have claims to recover his funds from
third parties on various tort or contract theories.

This factor weighs against annulment.

4. <u>Debtor's overall good faith (totality of the
circumstances)</u>: McGilvray does not contend that Debtor or
counsel misrepresented facts or engaged in egregious behavior.
Dckt. 46. Debtor filed bankruptcy more than 15 days post-
foreclosure, but less than 60 days after the sale. McGilvray
contends that timing alone makes this factor support annulment.

The court disagrees. Debtor's largely uncontroverted
declaration states she was made aware of the sale weeks after
the foreclosure. Dckt. 62. No evidence was presented that she
was aware of the sale date. It seems likely she received notice
of the sale, but there is no proof of that on this motion.
Nevertheless, given the delay before many sales are final under
the new law, this factor does not support annulment.

5. <u>Whether creditors knew of the stay but nonetheless
acted, thus compounding the problem</u>: McGilvray contends that he
did not have knowledge of the bankruptcy at the time this case
was filed. Dckt. 47. McGilvray's bankruptcy attorney declares
that there was no record notice or constructive notice in the
form of a recorded notice of bankruptcy. Dckt. 48. Movant was
not listed as a creditor in Debtor's schedules. Although
McGilvray recorded the Trustee's Deed and initiated the Unlawful
Detainer Action post-petition, after learning of the bankruptcy,

McGilvray filed a motion for relief from the automatic stay (PK-1), and then subsequently filed this motion to annul the stay.

In contrast, Debtor contends that McGilvray knew of the stay at the time the Trustee's Deed was recorded and at the time he filed the Unlawful Detainer Action. Dckt. 58, 61. Debtor suggests that the evidence proves he knew of the bankruptcy on the date it was filed and compounded the problem by recording the Trustee's Deed, giving a three-day notice to quit, initiating the Unlawful Detainer Action, and then waiting three months to file the first stay relief motion and four and one-half months to file this motion.

The court disagrees with Debtor here. There is nothing except speculation that McGilvray knew of the bankruptcy filing before he brought the Trustee's Deed to the Recorder's Office. He obviously subsequently learned of the bankruptcy, but he did not affirmatively act to seek stay relief for some months thereafter.[18]

As noted above, McGilvray was not listed in the bankruptcy schedules or master address list. The only evidence provided by Debtor is a declaration "on information and belief" that McGilvray knew about the bankruptcy before the Trustee's Deed was recorded and before the Unlawful Detainer Action was filed. Dckt. 62. However, non-expert witness testimony must be based on the personal knowledge of the witness. Fed. R. Evid. 602. Debtor's declaration fails to provide any credible evidence that McGilvray had knowledge of the bankruptcy.

---

[18] The court acknowledges McGilvray's counsel's representations supported by bankruptcy counsel's statements that there were ongoing settlement discussions for a time before motions were filed in this court.

1   This factor favors annulment on this record.

2   6. Whether the debtor has complied, and is otherwise

3   complying, with the Bankruptcy Code and Rules: McGilvray

4   contends that it is impossible to confirm a plan because no

5   adversary proceeding has been filed. Dckt. 46. However, Debtor

6   claims to be complying with the plan and is current on payments.

7   Although the objection to plan confirmation was sustained

8   earlier, the plan can be reconsidered or modified if this motion

9   is denied.

10  Notwithstanding failure to list McGilvray as a creditor in

11  this bankruptcy case, Debtor appears to have complied with the

12  Bankruptcy Code and Rules. This factor weighs slightly against

13  annulment.

14  7. The relative ease of restoring the parties to the *status*

15  *quo ante*: McGilvray contends that that he cannot be compelled to

16  give up his interest in Property without a repayment. Dckt. 46.

17  The original lender has been paid, so an adversary proceeding

18  would be necessary. In response, Debtor claims that it is easy

19  to restore the parties to the *status quo ante* because McGilvray

20  can be repaid because the sale is void. Dckt. 61.

21  The *status quo ante* appears to be the period after the

22  foreclosure sale but before the Trustee's Deed was recorded and

23  the Unlawful Detainer Action initiated. The Unlawful Detainer

24  Action is dismissed. However, under CC § 2924m(c)(4), restoring

25  Debtor to the *status quo ante* would result in Debtor possessing

26  legal and equitable title in Property because the foreclosure

27  sale was not final at the time of the bankruptcy.

28  ///

1    True enough, it is likely some litigation between McGilvray

2   and other parties may ensue. But when weighed here against

3   Debtor's losses if annulment is granted, the court sees this

4   factor slightly favoring denial of annulment.

5        8. The costs of annulment to the debtor and creditors:

6   McGilvray claims the cost of annulment is the cost of an

7   adversary proceeding. Dckt. 46. McGilvray contends this factor

8   supports annulment but insists that it should be limited due to

9   the extensive facts of this case.

10       In contrast, Debtor's asserted cost of annulment is

11  $250,000 plus attorney's fees, which is the equity lost as

12  result of the foreclosure sale. Dckt. 61-62. Debtor also says

13  that there is no cost for McGilvray. Instead, she asserts,

14  McGilvray would receive a $250,000 windfall from Debtor's equity

15  in Property if the sale were to be finalized and perfected.

16       Debtor has other creditors in this case. The successful

17  confirmation of a plan and repayment of creditors is enhanced if

18  annulment is denied. Otherwise, Debtor, her mother, and sister

19  will no longer have a residence and the possible payment to

20  creditors will be diminished.

21       Even if she prevails on this motion, Debtor must pay off

22  Flagstar to keep her residence. Any right Debtor had to

23  reinstate the loan with Flagstar vanished five days before the

24  sale. CC § 2924c(a)(1), (e). She has no windfall.

25       This factor weighs against annulment.

26       9. How quickly creditors moved for annulment, or how

27  quickly the debtor moved to set aside the sale or contract: In

28  the beginning of this case, there were some settlement

negotiations and neither party took any action. McGilvray initially moved for relief from stay on March 1, 2023, which is four months post-petition. PK-1.

Debtor claims that this delay is inexcusable; however, Debtor also acknowledges that the unfamiliarity with the new statutory scheme likely delayed the filing of the stay relief motion. Debtor claims she did not know about the foreclosure sale until late November 2022. She filed this case on December 1, 2022. Debtor moved expeditiously.

This factor weighs slightly against annulment.

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved to expeditiously gain relief: McGilvray claims he did not have notice of the bankruptcy. Dckt. 46-47. True enough, he was not listed in the schedules or the master address list. Although McGilvray did initiate the Unlawful Detainer Action, he has not prosecuted that case and it has been dismissed. *Id.*

In response, Debtor speculates McGilvray was likely informed of the bankruptcy by the foreclosure trustee on the petition date, thus prompting him to record the Trustee's Deed the next day. That recording also occurred before the 45-day period alleged to be applicable under CC § 2924h(c). Also, McGilvray's declaration was silent as to when he learned of the bankruptcy. The declaration says McGilvray had no knowledge of the bankruptcy at the time of recording but makes no mention of whether he knew about it at the time he filed the Unlawful Detainer Action. Given the 4-month delay in filing the first

1  stay relief motion, this factor weighs against annulling the

2  stay.

3       11. Whether annulment of the stay will cause irreparable

4  injury to the debtor: McGilvray says this factor supports

5  annulment because Debtor's right to reorganize was greatly

6  diminished at 8:01 a.m. on November 7, 2022 because the

7  foreclosure sale took place later that day. Dckt. 46.

8  McGilvray's position implies that Debtor could not have filed

9  bankruptcy before the sale but after 8:01 a.m. on that same day,

10 causing it to occur post-petition, and then use CC § 2924h(c) to

11 relate the sale back to before the petition date. However, this

12 approach is expressly rejected in *Sanders*. 198 B.R. at 329

13      Debtor will undoubtedly suffer irreparable injury if the

14 stay is annulled as discussed above. This factor weighs against

15 annulment.

16      12. Whether stay relief will promote judicial economy:

17 Annulling the stay would promote judicial economy by avoiding

18 litigation in the bankruptcy case. But, as mentioned, McGilvray

19 has rights to prosecute if he so chooses. This factor supports

20 annulling the stay.

21      The court concludes that the *Fjeldsted* factors do not

22 support annulling the automatic stay. The result may be

23 different if the sale had finalized before the petition date.

24

25                    V. CONCLUSION

26      The foreclosure sale was finalized post-petition and is

27 thus void as a violation of the automatic stay. CC § 2924h(c)

28 cannot be invoked to finalize the sale to the pre-petition date

1   of the sale because the Trustee's Deed was recorded before the

2   expiration of the 45-day bid period. The automatic stay was

3   therefore applicable. McGilvray violated the stay when he

4   recorded the Trustee's Deed. The *Fjeldsted* factors when properly

5   weighed and considered do not justify annulment of the stay.

6   Accordingly, the motion to annul the automatic stay is DENIED.

7        A separate order shall issue.

8

9   **Dated:** May 25, 2023              **By the Court**

10

11

12                                       **René Lastreto II, Judge**
                                        **United States Bankruptcy Court**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

    The Clerk of Court is instructed to send the Order/Judgment
or other court generated document transmitted herewith to the
parties below. The Clerk of Court will send the Order via the
BNC or, if checked ___, via the U.S. mail.

SHANNON HAGER
P.O. BOX 6645
Pine Mountain Club CA 93222

Michael H. Meyer
PO Box 28950
Fresno CA 93729-8950

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721

Andrew Christensen
1970 Broadway #550
Oakland CA 94612

Patrick Kavanagh
1331 L St
Bakersfield CA 93301

Robert S. Williams
2441 G St.
Suite A
Bakersfield CA 93301